**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| THADDEUS CRUMBLEY | : | |
| | : | |
| Appellant | : | No. 1899 WDA 2019 |

Appeal from the PCRA Order Entered December 13, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0002820-2012

BEFORE:  OLSON, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED AUGUST 20, 2020**

Thaddeus Crumbley (Crumbley) appeals the order of the Court of Common Pleas of Allegheny County (PCRA court) denying his petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. The central claim in his petition is based on after-discovered evidence in the form of a purported eyewitness.  Crumbley also argues for the first time in his appellate brief that PCRA counsel was ineffective for failing to assert trial counsel's ineffectiveness due to lack of an objection to improper closing statements and failing to preserve a jury instruction issue.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

**I.**

In 2012, Crumbley and his co-defendant, Matthew Ebo (Ebo), were found guilty of murder and several-related offenses. *See Commonwealth v. Crumbley*, 127 WDA 2016 (Pa. Super. June 21, 2017). The Commonwealth's only eyewitness was Saday Robinson (Robinson), who testified that she saw Crumbley and Ebo shoot the victim, Todd Mattox.

Crumbley and Ebo were sentenced, each receiving life terms, and they filed direct appeals. Prior to filing briefs, they applied for a remand to the trial court for an evidentiary hearing based on after-discovered evidence, namely, Robinson's recantation of her identification in a letter dated November 12, 2014. We granted the application for a remand so that the trial court could determine whether to grant Crumbley and Ebo relief.

However, at the evidentiary hearing, Robinson withdrew her previous recantation, explaining that she gave it due to threats by Crumbley and Ebo's associates, and the trial court ruled that a new trial was not warranted. The direct appeal then resumed before this Court, and in 2017, Crumbley's judgment of sentence was affirmed,[1] becoming final on March 13, 2018.[2] We

---

[1] Ebo's convictions were also affirmed, but this Court ordered a resentencing to remedy violations of *Alleyne v. United States*, 570 U.S. 99 (2013). Crumbley's sentence was not affected.

[2] Crumbley filed a petition for allowance of appeal before the Pennsylvania Supreme Court, which was denied on December 13, 2017, and he did not seek relief before the United States Supreme Court. His judgment of sentence,

- 2 -

found no merit in any of Crumbley's direct appeal issues, including the claim that Robinson's recantation entitled him to a new trial.

Crumbley timely filed his first PCRA petition, *pro se*, and he was appointed PCRA counsel who submitted an amended version claiming that a new eyewitness to the Mattox murder had come forward.[3] This witness, Robert Raglin (Raglin), submitted a signed statement dated July 31, 2018, describing what he had seen. The PCRA court held a hearing on May 10, 2019, to assess Raglin's credibility. *See* PCRA Hearing, 5/10/2019, at pp. 44-46. After he testified, the PCRA court made the following findings:

> a. On May 16, 2011, the day Todd Mattox was shot to death at the Leechburg Gardens Apartments in Penn Hills, Mr. Raglin was working as a jitney driver.
>
> b. That evening, shortly before the shooting occurred, Mr. Raglin picked up two (2) African American men and drove them to the Leechburg Gardens apartment. He claimed that he recognized these men because they had used his jitney services "more than ten" times in the past. He described one of the men as being "really tall" with "dark skin," approximately 6'8 in height. He described the other man as being "short" and "light-skinned."

_____

therefore, became final on March 13, 2018, when the 90-day period for seeking a writ of certiorari expired. Crumbley had a year from that date to timely file a PCRA petition, which he did, *pro se*, on February 13, 2018.

[3] Crumbley's PCRA counsel abandoned several of the claims Crumbley had asserted in his initial *pro se* petition, including Claims IV and VI, which became the basis of Crumbley's layered ineffectiveness claims in this PCRA appeal. Both issues – regarding improper prosecutorial comment and denial of a missing witness instruction – were found to be waived by trial counsel in Crumbley's direct appeal. *See Commonwealth v. Crumbley*, 127 WDA 2016 (Pa. Super. June 21, 2017).

c. When presented with photographs that were marked as Defense Exhibits A and B, he was able to identify the individuals in those pictures as the men he had driven to the Leechburg Gardens apartment that day. (He had nicknamed them "stretch" and "young buck" but recalled that they referred to each other as "Ron and Rome or something like that.")

d. Mr. Raglin testified that he dropped these men off at the Leechburg Gardens [apartment] at approximately 7:00 p.m., when it was getting dim outside.

e. After he dropped them off, Mr. Raglin testified to the following series of events:

> I was turning my car around so I could go out. I had to go to the bathroom by the fire hydrant and the big Christmas tree. As I'm standing up peeing, a white car comes in [the parking lot], two guys started busting off caps, and everybody started shooting at each other. I dove on the ground, crawled in my car, dropped my seat back and pulled out.

f. Mr. Raglin testified that he "clearly" saw that "Ron and Rome" were firing their guns "[o]ver in that direction towards the parking lot in that area" where the white car was located.

g. However, he also testified that he "wasn't paying no attention" to what or who they were shooting at because he dropped to the ground as soon as he saw "the sparks and fires." As he described it: "I dropped down, peed on myself, crawled in my car, kicked my seat back and just pulled off. I started lifting my head up as I am pulling out."

h. After Mr. Raglin got back inside of his vehicle, he noticed that the white car had pulled out behind him, and he thought that the people inside of the white car were going after him because of what he had just witnessed.

i. Even though Mr. Raglin saw Ron and Rome shooting at the people in the white car, Mr. Raglin thought that Ron and Rome were now in the white car behind him. However, Mr. Raglin never saw anyone get in or out of the white car, and he could not see inside of the vehicle at any point. Mr. Raglin was able to retreat safely from the scene, but he never went to the police to report

- 4 -

the shooting that he had allegedly witnessed, and, at that time, he was unaware that anyone had been killed in the shootout. Law enforcement also never attempted to contact him in 2011 about the shooting.

* * *

k. When asked why he decided to come forward with this information in 2018, Mr. Raglin testified as follows: I was in the [Allegheny] county jail, and I was on the fourth floor just coming in, and these gentlemen was talking and they was pointing at me. So they called me to be released. As I am coming downstairs to be released, some young guy told me - he was from Turtle Creek or something - he told me that I was there. And I said, "[w]here?" He says "you was there for the 'Leechburg, Penn Hills'] shooting." And he goes, "say that you wasn't, and jump on you." I'm like, what the hell? So I put my foot on the bunk and stood up to fight to defend myself.

l. Mr. Raglin testified that this young man was a fellow inmate whom he did not know and had never seen before. This unidentified inmate told Mr. Raglin that he knew Mr. Raglin was there that night because he was there too.

m. Mr. Raglin stated that the inmate provided the details of the incident, telling him "exactly where it happened, exactly what time it was. [The inmate] said the guy's name that died." The inmate also told him that "these were the two men that did it."

n. Mr. Raglin testified that he was scared that this inmate was going to physically assault him. He "felt threatened enough . . . to jump on the bunk and brace" himself "for just two of them against me." The jail guards had to step in to prevent an altercation.

o. Mr. Raglin testified that he "didn't know any of this [information]" and that he was "in shock" because he was "being attacked" so he "had to do research on why" he was "being attacked."

p. Mr. Raglin testified that when he was released from jail shortly thereafter, he had a friend of his fact-checked [sic] the information that the inmate had provided on her cell phone because he wanted to know why he "was threatened for my life in

jail." He asked his friend to google "the days, dates, things like that."

q. When he saw the pictures of [Crumbley and Ebo] and learned that they had been convicted of the murder, he "knew [they were not] the people that" he had driven to the complex. This prompted Mr. Raglin to write a letter to . . . Crumbley telling him "that I knew they were innocent because I was there."

r. Mr. Raglin testified that he decided to reach out to Mr. Crumbley because he had a brother in prison who he believes was wrongfully convicted, and he did not "want an innocent man to be in jail."

s. Mr. Raglin further testified that he does not know and has never seen any member of the Crumbley or Ebo family and that [Crumbley and Ebo] were not present during the shooting incident that he witnessed.

t. Mr. Raglin confirmed that the witness statements that were attached to the PCRA petitions were true. Though he claimed he saw "something in one line somewhere" when he was reading it that was a discrepancy, but he never scratched anything out or attempted to correct this purported discrepancy.

u. Mr. Raglin also testified that he did not attempt to contact law enforcement or the District Attorney's Office with the information he had relayed to . . . Crumbley through his letter.

v. When questioned by this court, Mr. Raglin clarified that he did not actually see anyone get struck by a bullet, he did not see what the victim looked like at any point, and he did not see anyone laying on the ground. He also testified that he never saw anyone get out of the white car before the shooting started and he did not see who entered the white car after the shooting because he "wasn't paying attention" and "everything happened in a tenth of a second."

Order and Opinion, 12/13/2019, at 5-11 (footnotes, headings and citations omitted).

The PCRA court denied Crumbley's after-discovered evidence claim on the grounds that Raglin's testimony would be used solely to impeach the

credibility of the Commonwealth's eyewitness, Robinson, and that Raglin's account would be unlikely to compel a different verdict were a new trial granted. *Id*. at 11-17. Crumbley timely appealed and his PCRA counsel filed a 1925(b) statement raising issues limited to the after-discovered evidence claim.

Now in his appellate brief, Crumbley presents three grounds for our consideration:

> i. Whether the PCRA court erred in denying Mr. Crumbley's after-discovered evidence claim by finding that Robert Raglin's testimony would be used solely to impeach Saday Robinson's testimony and finding that Mr. Crumbley did not suffer actual prejudice[;]
>
> ii. Whether Mr. Crumbley was denied his federal and Pennsylvania *constitutional* due process right to effective assistance of PCRA counsel and his rule-based right to such assistance where PCRA counsel failed to allege trial counsel's ineffectiveness for not objecting to the prosecutor's improper reference to Mr. Crumbley as an "angel of death" [and;]
>
> iii. Whether Mr. Crumbley was denied his federal and Pennsylvania *constitutional* due process right to effective assistance of PCRA counsel and his rule-based right to such assistance where PCRA counsel was ineffective in failing to argue trial counsel's ineffectiveness in declining to preserve for review her request for a missing witness instruction when the Commonwealth did not present Richard Carpenter[.]

Appellant's Brief, at p. 9 (emphasis added, suggested answers omitted).

The Commonwealth responds in its brief that the PCRA court did not abuse its discretion in ruling that Crumbley failed to establish his after-discovered evidence claim. As to the latter two claims concerning Crumbley's claims of ineffective PCRA counsel, the Commonwealth contends that such

issues cannot be raised for the first time on appeal, and that even if they could be considered, the claims lack merit.

Crumbley replied that his two claims of ineffective PCRA counsel may now be heard because he raised them at the first possible opportunity, and they are based on his constitutional right to effective counsel at the post-conviction stage rather than his "rule-based" right to PCRA counsel. Through this distinction, Crumbley contends that the procedural bars on his claims of ineffective PCRA counsel do not apply.

After reviewing the record and the applicable law, we find that there is no basis to disturb the PCRA court's denial of Crumbley's after-discovered evidence claim.[4] As to Crumbley's two additional claims of ineffective assistance of PCRA counsel, we decline to consider their merits for lack of jurisdiction.

## II.

Crumbley's first issue concerns the PCRA court's denial of his after-discovered evidence claim. At the evidentiary hearing, Crumbley and his co-defendant presented the testimony of a new witness (Raglin), who testified that two other men had killed the victim.

_____

[4] In reviewing the denial of Crumbley's claims, we are limited to determining whether the PCRA court's findings are supported by the record and free of legal error. *See Commonwealth v. Allen*, 732 A.2d 582, 586 (Pa. 1999).

After-discovered evidence is a ground for relief under the PCRA. **See** 42 Pa.C.S. § 9543(a)(2)(vi). Relief is due when the proponent can "demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted." **Commonwealth v. Pagan**, 950 A.2d 270, 292 (Pa. 2008). Failure to satisfy any one prong is fatal to the claim. **See Commonwealth v. Solano**, 129 A.3d 1156, 1180 (Pa. 2015) ("As this test is conjunctive, failure to establish one prong obviates the need to analyze the remaining ones.").

The PCRA court found that Crumbley had not satisfied the third and fourth prong. **See** PCRA Court Opinion, 12/13/2019, at 12-17. We disagree with the PCRA court that the third prong was not met, but affirm the denial of the claim based on Crumbley's failure to establish the fourth – that the result would have been different if a new trial was granted.

**A.**

Approximately eight years after the Mattox murder occurred, Crumbley put forward the eyewitness account of Raglin, whose testimony conflicts with the Commonwealth's sole eyewitness at trial, Robinson. The PCRA court found that Raglin's testimony would be used solely to impeach the credibility of Robinson. **Id**. at 12-15 (citing **Commonwealth v. Weis**, 611 A.2d 1218,

1229 (Pa. Super. 1992) ("Whenever a party offers a witness to provide evidence that contradicts other evidence previously given by another witness it constitutes impeachment[.]").

However, Crumbley had no other eyewitnesses at trial who had identified someone other than himself and the co-defendant as the perpetrators of the subject murder. Raglin's account, then, did not simply undercut Robinson's credibility or cast doubt on her identification; that was incidental. If believed, Raglin *also* directly established that someone other than Crumbley committed the murders. For that reason, the third prong is satisfied because Raglin's testimony did more than impeach the credibility of another witness.

**B**.

We now turn to the fourth prong of the claim – whether Raglin's testimony would have likely resulted in a different outcome if a new trial were granted. **See Pagan**, 950 A.2d at 292. "In making that determination, a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." **Commonwealth v. Padillas,** 997 A.2d 356, 365 (Pa. Super. 2010). "[C]ases that have addressed [newly-discovered evidence] have focused not simply on the credibility of the person offering the exculpatory evidence, but on the credibility or trustworthiness of the evidence itself, as well as the motive, or other impeaching characteristics, of those

- 10 -

offering it." *Id*. (quoting *Argyrou v. State*, 709 A.2d 1194, 1204 (Md. 1998)).

On review of a PCRA court's ruling, we must defer to its factual determinations, including those relating to the credibility of witnesses. *See Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). The PCRA court's rulings must stand as long as they are supported by the record and free of legal error. *See id*.; *see also Commonwealth v. Mitchell*, 105 A.3d 1257, 1277 (Pa. 2014) (as finder of fact, a "PCRA court judge may believe all, some, or none of a particular witness's testimony.").

Here, on the one hand, the PCRA court found Robinson credible when she testified both at trial and at a PCRA hearing regarding her identification of Crumbley and post-trial recantation. The PCRA court emphasized that Robinson had described the incident in detail. Further, the PCRA court had assessed her demeanor firsthand, noting that she "shook uncontrollably throughout her testimony and was clearly frightened to be involved in the case." PCRA Court Opinion, 12/13/2019, at 15. The PCRA court credited Robinson's explanation that she earlier attempted to recant her trial testimony because she had been threatened into doing so indirectly by Crumbley and the co-defendant. *See id*. at 13.

On the other hand, the PCRA court found that Raglin lacked credibility based on his demeanor and the lack of detail in his account. While Raglin testified that Crumbley and Ebo were not the shooters, he also said that he

did not see the victim in the car in which he was shot, and that once he heard gunfire, he dropped to the ground and stopped paying attention. *Id*. at 13.

In addition to the problems with the content of Raglin's testimony, the PCRA court was rightfully skeptical about the reasons why he had come forward. Raglin, who was in jail in 2018, testified that he was randomly prompted to give an exonerating statement in Crumbley's favor by an unnamed inmate who physically threatened him.

Nothing in Raglin's testimony or elsewhere in the record explains how, in 2018, this unnamed inmate could possibly know that Raglin saw the Mattox shooting in 2011; nor did Raglin explain why this inmate would have reason to threaten him due to his presence there. Up until then, it was unknown to police, Crumbley and even Raglin himself that he had witnessed a murder. Raglin also did not know at the time he was threatened that Crumbley and Ebo had been found guilty of murdering Mattox. According to Raglin, he only learned the names of the victim and the accused after he was released from incarceration and had the chance to research the incident on the internet.

Based on the PCRA court's assessment of Raglin's testimony and evidence against Crumbley, we find no abuse of discretion. The record supports the PCRA court's finding that Raglin's account would have had minimal value as compared to the evidence of Crumbley's guilt. Robinson was found credible, and there are too many holes in Raglin's bizarre story for it to likely change the outcome of a new trial.

**III.**

Next, Crumbley asserts for the first time in this appeal that his PCRA counsel was ineffective for failing to raise two issues in his PCRA petition concerning trial counsel's deficient performance. Before reaching the merits of those layered ineffectiveness claims,[5] we must determine whether we have authority to do so.

In Pennsylvania, the right to post-conviction relief is statutory, or "rule-based" in nature, as codified in the PCRA, and the Pennsylvania Rules of Criminal Procedure, which provide that "the judge shall appoint counsel to represent the defendant on the defendant's first petition for post-conviction collateral relief." Pa.R.Crim.P. 904(C).

The PCRA affords state courts authority to consider the merits of post-conviction claims only so long as they comport with the PCRA's procedural requirements. PCRA claims are considered to be waived and unpreserved for appellate review unless a petitioner first asserts them in a PCRA petition within one year from the date the judgment of sentence became final. **See** 42 Pa.C.S. § 9545(b). Otherwise, some exception to the time-bar must apply. **See id**. at § 9545(b)(1)(i)-(iii). A party must also preserve issues by having

_____

[5] Crumbley's ineffectiveness claims as to PCRA counsel are derived from his underlying assertion that trial counsel performed deficiently and PCRA counsel should have raised such issues; accordingly, PCRA counsel could only be found ineffective if trial counsel was ineffective. **See Commonwealth v. Rykard**, 55 A.3d 1177, 1190 (Pa. Super. 2012).

- 13 -

them adjudicated at the earliest possible time and then listing them in a 1925(b) Statement. **See** Pa.R.A.P. 302(a), 1925(b)(4).

In practice, these rules often make it difficult, if not impossible, for PCRA petitioners to enforce their right to effective counsel. ***See e.g., Commonwealth v. Holmes***, 79 A.3d 562, 583-84 (Pa. 2013) ("[T]here is no formal mechanism in the PCRA for a second round of collateral attack focusing upon the performance of PCRA counsel, much less is there a formal mechanism designed to specifically capture claims of trial counsel ineffectiveness defaulted by initial-review PCRA counsel.").[6]

Pennsylvania courts are well-aware "that failing to address PCRA counsel ineffectiveness claims raised for the first time on appeal renders effective enforcement of the rule-based right to effective PCRA counsel difficult at the state level." ***Commonwealth v. Henkel***, 90 A.3d 16, 29 (Pa. Super. 2014) (*en banc*); ***see also Commonwealth v. Watts,*** 23 A.3d 980, 983 (Pa. 2011) (holding that PCRA "confers no authority upon this Court to fashion *ad hoc* equitable exceptions to the PCRA time-bar in addition to those exceptions expressly delineated in the [PCRA].").

---

[6] The sole exception is one that does not apply in the present case. In ***Commonwealth v. Peterson***, 192 A.3d 1123, 1125 (Pa. 2018), our Supreme Court held that a petitioner may assert a claim of *per se* ineffectiveness of PCRA counsel for the first time on appeal where the petitioner has effectively been denied representation at the post-conviction stage. This exception is of no avail to Crumbley because his PCRA counsel filed PCRA claims on his behalf, and he was not deprived of representation during these collateral proceedings.

- 14 -

Despite these observations, "no definitive resolution has emerged" as to how the right to effective PCRA counsel is to be assured. **Henkel**, 90 A.3d at 29 (quoting **Holmes**, 79 A.3d at 584).

Here, Crumbley attempts to avoid the above obstacles by arguing that he is not proceeding under the "rule-based" right to PCRA counsel. He stresses that he is asserting a violation of his *constitutional* right to effective counsel during post-conviction proceedings, rendering inapplicable prior decisional law as to the PCRA's procedural bars.

Yet, the fact remains that no Pennsylvania court has ever recognized a constitutional right to post-conviction counsel. To the contrary, Pennsylvania courts have repeatedly declined to recognize the existence of such a right in cases just like this one, where the claim of ineffective post-conviction counsel is raised for the first time on appeal: "[W]e hold that, absent recognition of a constitutional right to effective collateral review counsel, claims of PCRA counsel ineffectiveness cannot be raised for the first time after a notice of appeal has been taken from the underlying PCRA matter." **Commonwealth v. Ford**, 44 A.3d 1190, 1201 (Pa. Super. 2012).

Accordingly, we find that Crumbley's claims of ineffective post-conviction counsel cannot be heard on the merits at this time, as they were raised for the first time on appeal, and no constitutional right to effective post-conviction counsel has been recognized in Pennsylvania.

Order affirmed.

- 15 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/20/2020